WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Chen, | No. CV-21-01025-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Cozzoli LLC, | |
| Defendant. | |

Jennifer Chen ("Plaintiff") alleges that she was subjected to discriminatory treatment and retaliation before being wrongfully terminated from her job as an assistant manager at Villa Restaurant Group ("VRG"), which is operated by Cozzoli LLC ("Defendant"). Plaintiff further alleges that Defendant caused her to be terminated from her next job at a different food service company by bad-mouthing her to that company's management. Now pending before the Court is Defendant's motion to dismiss. (Doc. 15.) For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

I.   Factual History

The following facts, presumed true, are derived from Plaintiff's complaint (Doc 1-3 at 2-20) and the judicially noticeable materials submitted by Defendant (Doc. 15-2).

Plaintiff is an Asian-American woman who was hired to work at VRG in July 2016. (Doc. 1-3 ¶¶ 3, 5, 8.) Plaintiff resigned for personal reasons in April 2018 but was rehired as a Catering Hourly Assistant Manager in August 2019. (*Id.* ¶¶ 11-12.)

At relevant times, Plaintiff reported to Interim District Manager Patricia Cobain, who is Hispanic. (*Id.* ¶¶ 15-17.) During her course of employment, Plaintiff was subjected to recurrent race- and national origin-based insults, harassment, and acts of discrimination and repeatedly reported those incidents to VRG representatives. (*See, e.g.*, *id.* ¶ 39 ["On August 20, 2019, [Plaintiff] emailed District Vice President Kelly Hernandez to request a meeting with her. In that email, [Plaintiff] reported that she believed Cobain was providing preferential treatment to Hispanic employees and that she was being subjected to a hostile work environment."]. *See also id.* ¶¶ 18, 23-35, 40-61.)

The complaint alleges that Plaintiff also reported two other categories of illegal conduct—missing money and food-safety violations—to VRG representatives. (*Id.* ¶¶ 20, 62-78.) As for the first category, the complaint elaborates that Plaintiff "reported on two separate occasions in which the Stores' safe was short money." (*Id.* ¶ 20.) However, the complaint does not identify the VRG representative(s) to whom Plaintiff made those reports and does not specify the dates on which those reports were made.

As for the second category, the complaint alleges that, on October 9, 2019, Plaintiff observed a co-worker creating food-handling guidelines for an upcoming event in the Gila River Indian Community that would "require[] VRG employees to violate numerous food safety regulations." (*Id.* ¶¶ 62-63.) In response, Plaintiff "consulted with both the Maricopa County Food Inspector and the Gila River Supervisor of Environmental Health," and she "was advised that [the guidelines] did not comport with food safety regulations and that VRG did not even have the food permit required to cater events at Gila River." (*Id.* ¶¶ 65-68.) On October 14, 2019, Plaintiff "reported her concerns regarding unsafe food transportation and regulations to Catering Sales Manager Joanna Zabor," but "Zabor ignored [Plaintiff's] concerns, and expected [Plaintiff] to proceed in a manner that violated food safety regulations." (*Id.* ¶ 70.) On an unspecified date, Plaintiff also "expressed her concerns to Cobain about unsafe food transportation and handling," but "Cobain told [Plaintiff] not to worry about these issues because there were no pending issues with the health inspector." (*Id.* ¶¶ 75-76.) Finally, on October 24, 2019, Plaintiff was scheduled to

attend a catering event in Scottsdale, Arizona by herself. (*Id.* ¶ 92.) This staffing approach was problematic because "health code regulations requir[ed] at least two people to attend such events so that the person responsible for handling food would not also be required to handle money." (*Id.* ¶ 99.) Thus, "to remain in compliance with applicable health codes," as well as for other reasons, Plaintiff asked a former employee "to work the event with her." (*Id.* ¶ 94.) When Cobain "arrived at the event unannounced" and saw that Plaintiff was not alone, Cobain "immediately reprimanded [the other individual] in Spanish for providing assistance to [Plaintiff]." (*Id.* ¶ 95.) The following day, October 25, 2019, Plaintiff reported to Eric Lingzhi Wang, "the Stores' General Manager," "that she felt discriminated and retaliated against, that her superiors were instructing her to violate food safety regulations, and that she was reprimanded for refusing to do so." (*Id.* ¶¶ 49, 100.)

On October 27, 2019, Plaintiff reminded Cobain that she had been approved to take paid sick time on October 28, 29, and November 11 to see her doctor. (*Id.* ¶ 101.) The next day, Plaintiff received a voice message that she had been terminated. (*Id.* ¶ 102.)

On December 23, 2019, Plaintiff secured new employment at Fooda, another catering company. (*Id.* ¶ 107.) This employment lasted until October 2020, when Plaintiff was laid off by Fooda. (*Id.* ¶ 111.) The complaint alleges that the layoff decision was prompted by a phone call from Stephanie Beamer, VRG's Vice President of Catering, to a Fooda representative on December 27, 2020[1] in which Beamer "disparaged [Plaintiff's] character and reputation." (*Id.* ¶ 108.)

On March 5, 2020, Plaintiff filed a charge of discrimination with the Arizona Attorney General's Office. (Doc. 15-2.)

On June 25, 2020, Plaintiff filed a charge of discrimination with the EEOC. (Doc. 1-3 ¶ 113.)

On October 27, 2020, the parties entered into a written tolling agreement with an expiration date of January 26, 2021. (*Id.* ¶ 115.)

…

---

[1] As discussed in more detail below, Plaintiff now acknowledges this date is a typo.

II.     Procedural History

On May 4, 2021, Plaintiff initiated this action by filing a complaint in Maricopa County Superior Court. (Doc. 1-3 at 2-20.)

On June 11, 2021, Defendant removed the action to this Court. (Doc. 1.)

On August 23, 2021, Defendant filed the pending motion to dismiss. (Doc. 15.) The motion is now fully briefed. (Docs. 18, 21.)[2]

**DISCUSSION**

I.     Legal Standard

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the Court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-680. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. The court also may dismiss due to "a lack of a cognizable theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II.     Counts One And Two

    A.     **The Parties' Arguments**

In Counts One and Two of the complaint, Plaintiff asserts claims for wrongful termination in violation of the Arizona Employment Protection Act ("AEPA"). (Doc. 1-3 at 13-14 ¶¶ 119-35.) Specifically, in Count One, Plaintiff contends she was wrongfully

---

[2] Defendant requested oral argument, but this request is denied because the issues are fully briefed and argument would not aid the decision process. *See* LRCiv 7.2(f).

- 4 -

terminated in retaliation for her efforts to report to VRG that the company (or an employee of the company) had engaged in three discrete categories of illegal conduct: (1) subjecting Plaintiff to racial and national origin discrimination and retaliation in violation of the Arizona Civil Rights Act ("ACRA"); (2) stealing money; and (3) failing to abide by food safety laws, regulations, and permitting requirements. (*Id.* ¶¶ 121-23.) In Count Two, Plaintiff contends she was wrongfully terminated in retaliation for her refusal to personally commit a violation of food safety laws and regulations. (*Id.* ¶ 131.)

Defendant moves to dismiss Counts One and Two for failure to state a claim. (Doc. 15 at 4-8.) According to Defendant, the complaint is conclusory and fails to set forth facts establishing that (1) Plaintiff made the alleged reports "in a reasonable manner"; (2) the recipients of the reports were VRG employees whom Plaintiff "reasonably believed to be in a position to investigate"; and/or (3) the illegal conduct that Plaintiff was reporting constituted a violation of Arizona law. (*Id.*) Defendant further contends that an AEPA claim cannot be premised on a reported ACRA violation, because ACRA has its own remedial scheme, and that Plaintiff's allegations regarding theft and food safety violations are deficient because Plaintiff has not been able to identify (either in the complaint or during the meet-and-confer process) "any specific Arizona statute that Plaintiff reasonably believe[s] Defendant . . . violated." (*Id.*)

Plaintiff opposes Defendant's dismissal request. (Doc. 18 at 2-8.) As an initial matter, Plaintiff acknowledges that "her remedies for . . . violations of the ACRA are limited to those provided under the ACRA" and thus her AEPA wrongful termination claim must be premised on "her reports of other illegal conduct." (*Id.* at 6 n.1.) As for the non-ACRA reports, Plaintiff contends the complaint adequately alleges that the reports were made in a reasonable manner and to appropriate officials. (*Id.* at 2-7 & n.2.) As for Defendant's contention that she must identify the specific Arizona laws she believed were being violated, Plaintiff argues that "this is a more appropriate discovery request rather than a basis for a Motion to Dismiss" and that she "need not identify the law or legal citation for the claim[s] to be actionable." (*Id.* at 6-8.)

In reply, Defendant argues that Plaintiff should be required, at the pleading stage, to identify the specific laws at issue (because, otherwise, Defendant will be unable to evaluate whether the other laws have their own remedial schemes); reiterates that the factual allegations in the complaint fail to show that Plaintiff's reports were made in a reasonable manner or to an appropriate official; and reiterates that Counts One and Two can't be premised on ACRA violations. (Doc. 21 at 1-3.)

B. **Analysis**

1. Count One

Under A.R.S. § 23-1501(A)(3)(c)(ii), "[a]n employee has a claim against an employer for termination of employment" if:

> The employer has terminated the employment relationship of an employee in retaliation for . . . [t]he disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

*Id.* Thus, to prevail on a claim under this provision of AEPA (which gives rise to Plaintiff's claim in Count One), Plaintiff "must establish: (1) she had information or a reasonable belief that her employer or another employee had violated an Arizona statute or constitutional provision; (2) she disclosed the information or belief to an employer or a representative of the employer whom she reasonably believed was in a managerial or supervisory position and had the authority to investigate the information and take action to prevent further violations of the Arizona constitution or statutes; and (3) she was terminated because of the first two steps." *Denogean v. San Tan Behavioral Health Servs., LLC*, 2017 WL 4922035, *3 (D. Ariz. 2017).

Although the complaint identifies many instances in which Plaintiff reported to

VRG supervisors that suspected violations of Arizona law were occurring, the majority of those reports concerned the race and national origin discrimination and retaliation that Plaintiff was allegedly experiencing. (*See, e.g.*, Doc. 1-3 ¶¶ 27, 39, 48, 50, 52, 60.) As Defendant correctly notes, reports of such violations cannot give rise to an AEPA claim because they are separately actionable under ACRA. *Archer v. Partners in Recovery LLC*, 2019 WL 3253175, *3 (D. Ariz. 2019) (citing *Taylor v. Graham Cty. Chamber of Commerce*, 33 P.3d 518, 522 (Ariz. Ct. App. 2001)). Plaintiff concedes this point in her response. (Doc. 18 at 6 n.1.)

This leaves the allegations in the complaint pertaining to reports of theft and food-safety violations. As for the former, the difficulty is that the complaint does not allege when or how Plaintiff made the reports or to whom she made them. (Doc. 1-3 ¶ 20 ["[Plaintiff] reported on two separate occasions in which the Stores' safe was short money."].) Without those details, it is impossible to conclude that Plaintiff made the disclosure "in a reasonable manner" or that the recipient was "a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations," as AEPA requires.

In contrast, the complaint adequately provides those details with respect to the alleged reports of food-safety violations. It alleges that Plaintiff made one report on October 14, 2019 to Zabor, who is identified as Defendant's "Catering Sales Manager" (*id.* ¶ 69); that Plaintiff made a second report on an unspecified date to Cobain, who is elsewhere identified as an "Interim District Manager" (*id.* ¶¶ 17, 75); and that Plaintiff made a third report to Wang, who is elsewhere identified as "the Stores' General Manager" (*id.* ¶¶ 49, 100). Those factual allegations plausibly establish that Plaintiff made the reports in a reasonable manner and to an appropriate VRG representative.

The final issue is whether Plaintiff has identified the underlying violations with the necessary degree of specificity. Defendant argues that Plaintiff must identify the specific Arizona statute or constitutional provision that she reasonably believed had been violated,

while Plaintiff contends she should only be required to provide this level of detail at summary judgment.

There is a split in authority on this issue. *Foster v. Pinnacle Health Facilities XXI LP*, 2021 WL 4844102, *3 & n.2-3 (D. Ariz. 2021) (noting that "[m]any courts have concluded that a plaintiff asserting an AEPA claim must" identify "the Arizona statute that she reasonably believed [the employer] had violated" but also citing contrary cases suggesting that "it might be possible for an AEPA plaintiff to avoid specifying the underlying statutory or constitutional violation in a case where the factual allegations in the complaint are sufficiently detailed to establish that a triggering violation occurred"). To the extent it is necessary to wade into the debate here, the Court is persuaded by the decisions concluding that an AEPA plaintiff must identify the underlying Arizona statute or constitutional provision with specificity at the pleading stage. A plaintiff asserting an unlawful termination claim under § 23-1501(A)(3)(c)(ii) of AEPA does not need to go through the discovery process to determine why she chose to report illegal conduct to her employer—that is historical information uniquely within the plaintiff's possession. If the plaintiff cannot articulate, at the pleading stage of the case, a theory as to why the report was potentially actionable under § 23-1501(A)(3)(c)(ii), there is no point in allowing the case to proceed—as the Ninth Circuit has recognized, a court may dismiss a complaint at the pleading stage due to "a lack of a cognizable theory." *Mollett,* 795 F.3d at 1065. Here, the complaint does not identify, with specificity, the food safety laws and regulations that Plaintiff believed were being violated. Nor did Plaintiff make any effort to identify a specific law or regulation in response to the motion to dismiss. In light of these omissions, the complaint is subject to dismissal.

The Court further notes that paragraphs 65-66 and 73 of the complaint seem to suggest that any food-safety violations involved regulations promulgated by county (Maricopa and Pinal) and/or tribal (Gila River) authorities. It is questionable whether such violations could give rise to a claim under § 23-1501(A)(3)(c)(ii), which only bars termination in retaliation for a disclosure that the employer "has violated, is violating or

will violate *the Constitution of Arizona or the statutes of this state*." *Id.* (emphasis added). Plaintiff has not identified any case suggesting that county and tribal regulations qualify as state constitutional provisions or state statutes. *Cf. Kramer v. Jenkins*, 806 F.2d 140, 142 (7th Cir. 1986) ("[T]he violation of an administrative rule is not the same thing as the violation of the Constitution."). *See generally Galati v. Am. W. Airlines, Inc.*, 69 P.3d 1011, 1014 (Ariz. Ct. App. 2003) ("The language chosen by our legislature is unequivocal . . . . No mention is made of any federal provision, statute or regulation. . . . The statute reiterates that it is against violations of the Arizona Constitution and Arizona statutes that protection is provided."). At any rate, this issue provides all the more reason to require Plaintiff to specifically identify, at this stage of the case, the underlying state law that was the subject of her report.

        2.      Count Two

Under A.R.S. § 23-1501(A)(3)(c)(i), "[a]n employee has a claim against an employer for termination of employment" if the "employer has terminated the employment relationship of an employee in retaliation for . . . [t]he refusal by the employee to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state." Thus, to prevail on a claim under this provision of AEPA (which gives rise to Plaintiff's claim in Count Two), Plaintiff must establish that she refused to commit a violation of an Arizona statute or constitutional provision and was terminated due to that refusal.

Count Two fails for the same reasons as Count One. Although the complaint alleges that Plaintiff was terminated for "refus[ing] to violate various food safety laws and regulations when [in]structed to do so by her supervisors" (Doc. 1-3 ¶ 131), the complaint does not identify the underlying laws and regulations and seems to suggest they are regulations promulgated by county and/or tribal bodies, not state statutes or state constitutional provisions.

…

…

III. Count Five

    A. **The Parties' Arguments**

In Count Five of the complaint, Plaintiff asserts a claim for race and national origin discrimination in violation of ACRA. (*Id.* ¶¶ 152-56.)

Defendant argues that Count Five must be dismissed because it was filed outside ACRA's one-year statute of limitations. (Doc. 15. at 8-9.) Defendant contends that the limitations period began running on March 5, 2020, when Plaintiff filed a charge of discrimination with the Arizona Attorney General; that although the parties entered into a tolling agreement in October 2020, it expired on January 26, 2021; and that the statute of limitations had therefore expired by the time Plaintiff filed suit on May 4, 2021. (*Id.*)

In response, Plaintiff acknowledges that her ACRA claim is subject to a one-year statute of limitations and that she filed her complaint 14 months after the limitations period began running. (Doc. 18 at 8-10.) Nevertheless, Plaintiff contends her claim should be considered timely because "the parties entered into a Tolling Agreement that tolled the applicable statute of limitations." (*Id.*) Plaintiff further contends that, although the tolling agreement originally had an expiration date of January 26, 2021, the expiration date was extended twice: first, when her "former counsel and counsel for VRG extended the Tolling Agreement to February 16, 2021;" and second, when her current counsel emailed defense counsel to request an open-ended extension beyond February 16, 2021 and defense counsel "never objected to this or otherwise indicated that this was not her understanding of the agreement." (*Id.*) Plaintiff supplies, as an exhibit to her response, extensive email records between her counsel and defense counsel. (Doc. 18-1.) Plaintiff also argues that the statute of limitations "is subject to waiver, estoppel, and equitable tolling" and that she reasonably relied on Defendant's representation that the statute of limitations remained tolled. (Doc. 18 at 10.)

In reply, Defendant argues that the complaint does not allege that the parties entered into an agreement to extend the tolling agreement, that the evidence Plaintiff attached to her response cannot be considered on a motion to dismiss, and that Plaintiff's evidence

- 10 -

fails to establish that the parties agreed to extend the tolling agreement indefinitely. (Doc. 21 at 4-7.)

B. **Analysis**

Defendant's motion to dismiss Count Five on timeliness grounds is denied. Although the parties spill much ink debating whether the tolling agreement was extended, Count Five would be timely even under the agreement's original, un-extended terms.

Under the tolling agreement, the parties agreed "to toll and suspend from running for the Duration of this Agreement all limitations period(s) applicable to any and all . . . causes of action . . . relating in any way to [Plaintiff's] employment." (Doc. 18-1 at 2.) The parties further "agree[d] that they will not assert any defense . . . relying upon the period of time that lapses while this Agreement is in effect." (*Id.*) The tolling agreement specified that it was "in effect beginning on October 28, 2020 . . . and ending on January 26, 2021" and clarified that any "limitations period(s) shall cease to be tolled and commence running again on . . . January 26, 2021." (*Id.* at 2-3.)

The plain, unambiguous meaning of this contractual language is that the limitations period on Plaintiff's ACRA claim *stopped running* between October 28, 2020 and January 26, 2021 and only resumed running on January 26, 2021. Because the parties agree that Plaintiff's claim accrued on March 5, 2020, when she filed her charge of discrimination with the Arizona Attorney General's office, this means that 237 days of the limitations period had run by the time the tolling provision kicked in on October 28, 2020, at which point the clock stopped. It resumed running no earlier than January 26, 2021, meaning that Plaintiff had another 128 days (*i.e.*, 365 minus 237) from that point to file suit. Plaintiff filed suit on May 4, 2021, which was only 98 days later. This was within the one-year limitations period.

IV. Count Seven

A. **The Parties' Arguments**

In Count Seven of the complaint, Plaintiff asserts a claim for intentional interference with contract and contractual relations. (Doc. 1-3 ¶¶ 165-71.) In a nutshell, Plaintiff

- 11 -

contends that Defendant caused her to be fired by Fooda, which is where she was hired after being terminated by Defendant, by "disparag[ing]" her "character and reputation" during a phone call to Fooda. (*Id.* ¶ 108.)

Defendant moves to dismiss Count Seven because the complaint fails to allege facts establishing a plausible causal connection between the phone call and Fooda's termination decision. (Doc. 15 at 10-13.) As an initial matter, Defendant contends that the complaint erroneously identifies the date of the phone call as December 27, 2020, which is obviously a typo because Fooda's termination decision is alleged to have occurred in October 2020. (*Id.*) Assuming the date of the call is actually December 27, 2019, Defendant contends that the eight-month gap between the call and the termination decision is too long to suggest a plausible causal connection. (*Id.*)

In response, Plaintiff agrees that the call occurred in December 2019 but argues that temporal proximity is not the only way to prove causation. (Doc. 18 at 10-13.) Plaintiff argues that the existence or non-existence of temporal proximity is "a fact question, and inappropriate for resolution at this stage in the proceedings." (*Id*.) Plaintiff also argues that the cases cited by Defendant are distinguishable because they did not analyze causation at the motion-to-dismiss stage. (*Id.*) Finally, Plaintiff contends that Count Seven should survive dismissal because she "has reason to believe" that employees of Defendant "communicated negatively about her on more than one occasion between December 27, 2019 and her termination date." (*Id.*)

In reply, Defendant argues that even taking Plaintiff's allegations as true, the facts alleged fail to support a causal connection. (Doc. 21 at 7-8.) Defendant states that if Plaintiff was disparaged in December 2020 and terminated in October 2020, it would be impossible for the phone call to be the cause of the termination, and Plaintiff has not offered a valid reason for refusing to amend her complaint to allege the correct date. (*Id.*) As for Plaintiff's suggestion that there may have been other disparaging conversations beyond the one alleged in the complaint, Defendant asserts that Plaintiff did not include any allegations regarding those conversations in the complaint or mention them during the parties' meet-

and-confer process. (*Id.*)

B. **Analysis**

Defendant's motion to dismiss Count Seven is granted. The complaint alleges that Plaintiff was terminated by Fooda in October 2020 based on a phone call that occurred in December 2020. Under that chronology, the phone call obviously could not have caused the termination decision. Although Plaintiff now contends the call actually occurred in October 2019, the Court's role under Rule 12(b)(6) is to evaluate the sufficiency of the actual complaint, not a hypothetical future version of the complaint that Plaintiff has yet to file. The better approach in this circumstance is to dismiss with leave to amend.

The Court also construes Plaintiff's response as suggesting that, in a future version of her complaint, she will be able to allege that Defendant's representatives engaged in additional instances of disparagement that were closer in time to (and preceded) the October 2020 termination decision. Given that possibility, the Court finds it unnecessary at this juncture to decide whether an eight-month gap between a disparaging call and a termination decision would be enough to plausibly establish a causal connection between the two events.

V. <u>Leave To Amend</u>

Plaintiff requests leave to amend in the event of dismissal. (Doc. 18 at 13.) Defendant does not oppose this request in its reply.

Plaintiff's request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* (citation omitted). Thus, Plaintiff's amendment request should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Here, the Court will grant Plaintiff's amendment request in light of the policies

favoring liberal amendment, Defendant's apparent non-opposition to the request, and the fact that amendment would not clearly be futile.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 15) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Plaintiff may file a First Amended Complaint ("FAC") within 14 days of the issuance of this order.  If Plaintiff files an FAC, the changes shall be limited to attempting to cure the deficiencies raised in this order and Plaintiff shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit.

Dated this 22nd day of March, 2022.

_____
Dominic W. Lanza
United States District Judge